El Pueblo de Puerto Rico, demandante y apelado, *v.* William Torres Granado, acusado y apelante.

Núm. 9817.—*Sometido:* Abril 2, 1943. *Resuelto:* Mayo 18, 1943.

*Juan B. García Méndez,* abogado del apelante; *R. A. Gómez, Fiscal del Tribunal Supremo,* abogado de El Pueblo, apelado.

EL JUEZ ASOCIADO SEÑOR DE JESÚS emitió la opinión del tribunal.

José Nieves Hidalgo, sargento de la Policía Insular, y los policías William Torres Granado, Ramón López Giusti y Dámaso Alvarez fueron denunciados en la Corte Municipal de Aguadilla por infracción al artículo 138 del Código Penal. Consistió la alegada infracción en que en la ciudad de Aguadilla, entre siete y media y ocho de la noche del 5 de febrero de 1940, dichos acusados, so color de autoridad, en el cuartel de la Policía Insular, voluntaria y criminalmente, sin causa legal para ello, acometieron y agredieron, el primero con un garrote o bastón y los demás con macanas, el demente Jesús Badillo Méndez, causándole las siguientes heridas: una, lacerada contusa en forma estelar de alrededor de tres pulgadas de largo en la región parietotemporal izquierda con descubrimiento del cráneo; otra contusa de tres pulgadas de largo en la región occipital con descubrimiento del cráneo; contusión fuerte que le prohibe movimiento del anular izquierdo y fractura completa del cuarto metacarpo de la mano izquierda en su región distal.

Apelaron todos para ante la corte de distrito, pero habiendo ingresado en el ejército el acusado José Nieves Hidalgo, el juicio *de novo* se celebró contra los demás acusados, resultando convicto el apelante William Torres Granado y sentenciado a cumplir un mes de cárcel y a pagar cien dólares de multa y las costas. Los demás acusados fueron absueltos.

La prueba fué contradictoria. La de cargo tendió a demostrar que el día de autos Jesús Badillo Méndez, quien aunque demente no es peligroso, salió de un cafetín llevando en sus manos un cuchillo. El policía López Giusti, que lo

vió, le requirió para que le entregase el arma. Rehusó Badillo Méndez, pero al insistir el policía, Badillo, cogiendo el cuchillo por la hoja, se lo entregó de forma que el policía lo cogiese por el cabo. El policía tomó el cuchillo tan bruscamente que le produjo una herida en la mano a Badillo. Intentó entonces arrestarlo y el demente se negó a ir arrestado, pero al insistir el policía, accedió diciendo, a manera de transacción, que ambos, el policía y él, irían arrestados al cuartel y al efecto el policía lo agarró por el cinturón y el preso al policía por la correa que bajando de sus hombros sostiene el cinturón que porta y el revólver y la macana. Así marcharon ambos tranquilamente hasta el cuartel donde el policía entregó el cuchillo a un compañero suyo. Ordenó a Badillo que tomase asiento, y como rehusara sentarse, trató de obligarlo por la fuerza, trabándose la consiguiente lucha entre los dos. En esos momentos llegaron el sargento Nieves Hidalgo y el apelante, y éste primero y el sargento después agredieron a Badillo en la forma que dice la denuncia, apagando inmediatamente la luz por lo que los testigos de cargo no pudieron ver si algo más sucedió después.

La prueba de descargo discrepa de la de cargo solamente en cuanto a la forma en que se desarrollaron los sucesos en el cuartel. Según el apelante y sus testigos, al llegar el preso al cuartel se enfureció, insubordinó y maltrató de palabras al policía López Giusti, dándole una bofetada y entablándose entre ellos una lucha, pretendiendo el arrestado desarmar al policía. El policía de retén permaneció en su sitio; pero en esos momentos llegaron el sargento y el apelante y como el policía López Giusti era por razón de su edad y contextura física más débil que el demente y pedía auxilio, temeroso de que éste pudiese quitarle el revólver y usarlo contra él, al tratar uno de los policías de separarlo y no conseguirlo, el sargento Nieves Hidalgo ordenó al apelante que le diese un macanazo, y así lo hizo; pero como a pesar de ello Badillo no cedía el sargento le dió un garrotazo con el garrote que portaba, dando lugar a que perdiera fuerzas Badillo y en su

lucha con López Giusti fuese a dar con la arista de una columna, causándose una herida en la cabeza, siendo entonces dominado por la policía.

El juez sentenciador dió crédito a la prueba de cargo y refiriéndose a la de descargo manifestó que no le había merecido crédito.

Sostiene el apelante que la corte *a quo* incurrió en error manifiesto en la apreciación de la prueba y que actuó con prejuicio al estimar que dentro de las circunstancias del caso no estuvo justificada la agresión.

Hemos examinado la prueba toda y no podemos convenir con el apelante en la imputación que hace al juez sentenciador. El juez no venía obligado a dar crédito a la prueba de una u otra parte, sino a la que por la forma en que declararon los testigos y por todas las circunstancias concurrentes creyese él que se ajustaba a la verdad, y si creyó la de cargo y ésta lo convenció más allá de duda razonable de que el apelante era culpable del delito imputádole, no existe razón o motivo alguno que nos justifique en alterar su discreción en la apreciación de la prueba.

Insiste, sin embargo, el apelante en que al dar el macanazo que admite haber propinado al preso, lo hizo en defensa de su compañero y obedeciendo órdenes de su superior jerárquico el sargento Nieves Hidalgo. Si la agresión dentro de las circunstancias era innecesaria y por consiguiente ilegal, la orden del superior no constituye una defensa, pues el apelante no venía obligado a obedecer órdenes ilegales. Sobre la orden del superior jerárquico está el imperio de la ley contra la cual no pueden ir ni el sargento ni ningún otro oficial por elevada que sea su jerarquía, y, como se dice en *Grau* v. *Forge,* 3 A.L.R. 642, se presume concluyentemente que todo oficial de policía conoce su deber y debe abstenerse de faltar al mismo. Establecida esta premisa procede determinar si de acuerdo con las circunstancias concurrentes en este caso, la orden del sargento estaba justificada. Una persona razonable, actuando dentro de las circunstancias, se

hubiera dado cuenta de que no lo estaba. Sin detenernos a considerar, por no constar afirmativamente del récord, si el apelante o cualesquiera de los policías envueltos en este caso sabían que Badillo Méndez era demente y que como tal debieron tratarlo, evitando en lo posible enfurecerlo, es un hecho perfectamente establecido que el demente se hallaba desarmado en los momentos en que fué agredido, y si bien los policías declaran que él es un hombre fuerte, no implica ello que fuese de tan extraordinario vigor que cuatro policías no pudiesen separarlo del policía López Giusti, a quien, según la prueba de descargo, el preso tenía agarrado por la cintura. A nuestro juicio, la agresión por parte del apelante era claramente innecesaria y debiéndolo éste comprender así, al obedecer la orden del sargento asumió las consecuencias de su acto ilegal.

*Procede desestimar el recurso y confirmar la sentencia apelada.*